WARREN S. HARRIS, Adm'r of the Estate of Lucile Harris Tappan, Deceased, *et al.*, Plaintiffs-Appellees, *v.* ADRIAN R. JOHNSON *et al.*, Defendants-Appellants.

Third District   No. 76-73

Opinion filed October 25, 1976.

Manion, Janov & Edgar, Ltd., of Hoopeston (Paul T. Manion, of counsel), for appellants.

George Kaye, of Paxton, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendants Adrian R. Johnson and Ruth Irene Johnson appeal from a decree of the Circuit Court of Iroquois County, which ordered a partition in kind of a lot found to be owned jointly by plaintiffs Lawrence W. Ostema and Dorothy Ostema and defendants. The decree also awarded defendants Johnsons owelty in the sum of $2,400 to equalize the value of the physical partition in kind and ordered that plaintiffs' attorneys' fees in the amount of $2,000 be taxed as a cost of the partition proceedings with the cost of such proceedings to be paid one-half by plaintiffs and one-half by defendants.

The action was instituted (in 1972) to compel partition, on behalf of plaintiffs, of a certain lot known as Outlot 19 which is an irregularly shaped parcel of real estate lying between Lot 12 owned by plaintiffs and Lot 14 owned by defendants in Block 9 of Bayles Lake Subdivision in Iroquois County.

Plaintiffs Lawrence W. Ostema and Dorothy Ostema are the owners in possession of Lot 12 by virtue of a contract for sale. Defendants Adrian R. Johnson and Ruth Irene Johnson are the owners of Lot 14. The sole improvement on the Outlot 19, located between Lots 12 and 14, is a two-stall garage. The garage rests primarily on Outlot 19 but a substantial part (approximately 20% of the garage) occupies a portion of Lot 12. At times prior to the start of this action and during the pendency of this proceeding, the use of the garage was shared by the owners of Lot 12 and the owners of Lot 14.

During the period of time following the purchase of Lot 12 and what plaintiffs Ostemas presumed was the north half of Outlot 19, the Ostemas used the entire garage for their purposes. No use was made of the garage by the defendants until the instant action was filed. After the partition suit was filed, the defendants and the Ostemas both used one-half of the garage. The defendants, however, did not use the garage for motor vehicles, but simply for storage in the south half of the garage. Their motor vehicles were apparently kept outside and not in the garage.

Commissioners were appointed in the partition action. The commissioners reported as follows:

"In view of the fact that the sole improvement on the property consists of a garage, which partially rests upon a portion of Lot 12, it would be inadvisable to allow the garage to become the sole property of the owners of Lot 14; because, by doing so, they would acquire property which in part, they had no legal interest in whatsoever.

It is, therefore, the opinion of the commissioners that the garage should finally repose in the legal hands of the owner of Lot 12.

The commissioners further recommend a partition rather than a

sale; because, in their opinion, a sale would actually injure both parties. The front yards of both parties would be seriously and adversely altered, and in the opinion of the commissioners, neither litigant could possibly profit therefrom."

The physical partition reported by the commissioners gave the plaintiffs the entire garage with an additional three feet to the south and east of the garage to enable the plaintiffs to maintain the east and south walls of the garage, as shown by a copy of the survey in evidence, which is hereto attached.

Objections were filed to the commissioners' report on the ground that there would be manifest prejudice to the owners of Lot 14, with a loss in value of their property without a one-stall garage, and also recited the difficulty of erecting a garage on the property remaining to the owners of Lot 14. The court at that time entered an order disapproving the report of the commissioners and the court appointed new commissioners who reported to the court that the premises were not susceptible of division without prejudice to the parties in interest and appraised the value of Outlot 19 in the amount of $5,000.

Plaintiffs, however, filed a motion to reconsider, and asked the court to reconsider the court order disapproving the original report of commissioners (and also filed objections to the second commissioners' report). Plaintiffs contended that manifest prejudice would result to plaintiffs because the portion of the garage located on Lot 12 would be a worthless structure without the rest of the garage. The parties also agreed that the trial judge should view the premises, which he did. There was evidence that cost of a new garage to be constructed by the owners of Lot 14 would be approximately $2,500 and that no alternative location was available for a garage on Lot 12. The owners of Lot 14 also stated that no practicable location could be obtained by the owners of Lot 14 for construction of a garage although they admitted that a garage could be built in an area where it would block the view from the owners' living room window.

At the conclusion of the hearing, the trial court sustained the objections to the reports of the second group of commissioners and reconsidered the prior disapproval and discharge of the original commissioners. The court confirmed the first report of commissioners directing that the premises be physically partitioned as previously described. Such division, in addition to providing for the garage as an entity to go with Lot 12, gave 50 square feet more to the owners of Lot 14, the defendants, and provided an additional frontage on the lot of 30 feet for the owners of Lot 14. The trial court also allowed $2,400 to defendants in owelty to equalize the value of property obtained by the owners of Lot 12 under such physical division, with the owners of Lot 12 ordered to pay such sum to defendants. An order was also entered by the trial court allowing attorneys' fees for

plaintiffs' attorneys in the sum of $2,000 to be taxed as costs in the partition action.

■■■ In a partition action, the law favors a division of land in kind, rather than a division of proceeds from the sale of the land. A sale under partition is proper only where the division of the premises cannot be made without manifest prejudice to the rights of the interested parties. (*Peck v. Peck* (1959), 16 Ill. 2d 268.) When property is susceptible to partition in kind, but the shares of the partition are not equal, the court may award owelty to equalize the shares taken in the partition. (*Cooter v. Dearborn* (1886), 115 Ill. 509, 4 N.E. 388; *Stegeman v. Smith* (4th Dist. 1966), 67 Ill. App. 2d 451.) It is apparent, therefore, that what the law favors is an equitable, but not necessarily equal, division of property, with the possible award of owelty to attempt to equalize the interests of the parties. In determining whether division can be made without manifest prejudice to the rights of parties, it is proper to consider the special circumstances which we find in the instant case, that the owners of the undivided interest in Outlot 19 owned the lots adjacent to Outlot 19 on opposite sides of the lot. While a division of property into small parcels may at times work prejudice to rights of parties (*Phillips v. Phillips* (1900), 185 Ill. 629), such division would not be so prejudicial as to deny partition in kind, if the distributed parcels are usable by the parties.

The fact that one of the parties here will be deprived of the use of the garage on Outlot 19 is not conclusive of such issue, but should be considered in determining the amount of owelty to be awarded to that party. The only alternative would be the sale of the property, in which case it must be assumed for purposes of a decision, that one or neither of the parties would later have no use of the garage. In the cause before us, considering the equities and based upon the evidence heard and a view of the premises, the trial judge found that partition in kind, as directed, together with owelty of $2,400 to the defendants is the proper equitable disposition of the partition action.

The purpose of a partition suit is to attain the most equitable partition which can be obtained with a preference given to partition in kind if possible, with a view to adjusting the equities of the parties by the use of owelty, if required. After obvious consideration of the alternative of a sale and following the viewing of the premises by the trial court, the trial court determined to approve the original report of commissioners as attaining the most equitable disposition and as being a more equitable arrangement than forcing a sale. Among other considerations, may have been a recognition of the argument made by plaintiffs that, because the garage was partially on Lot 12, plaintiffs would be under compulsion to buy at any public sale at whatever price the sale may ultimately have been increased above real value by a bidding by defendants or others. Plaintiffs point out that defendants would be under no such compulsion

since they had no part of the garage on their own property. It is likewise apparent that because of the irregular nature of the lot and the garage improvement, the practical and realistic partition in kind would necessarily be the partition as outlined by the first commissioners' report. The determination of the trial court that this was the most equitable disposition is supported by the record and we do not believe that we should set aside such determination since the rights and interests of the parties will have been recognized and dealt with equitably to the extent which was possible, considering the shape and size of Outlot 19 and the portion of the garage thereon. We, therefore, conclude that we should not disturb the order of the trial court directing such partition in kind and payment of owelty to defendants.

■■ The trial court's order, therefore, is supported by the evidence and partition in kind together with the allowance of owelty, the amount of which was not objected to by defendants, appears to be a proper equitable disposition of the partition of Outlot 19. In this case, it was within the discretion of the court to follow the policy of the law favoring partition in kind, since the garage structure on the property which was partitioned extended approximately 20% onto the adjoining land of plaintiffs and was actually separated by approximately 10 feet or more of defendants' land. That part of the building on plaintiffs' land contains the incoming electrical service for plaintiffs' adjacent residence while there is no similar connection to defendants' residence. Partition pursuant to section 8 of "An Act in relation to the partition of real estate * * *" (Ill. Rev. Stat. 1973, ch. 106, par. 51) was, therefore, properly made on the basis of the record.

■■ Defendants contend that they have properly preserved for review the issue of attorneys' fees allowed by the court and that the record does not sustain an award to appellees of attorneys' fees in the amount of $2,000 as fixed by the trial court. It is apparent from the record that the issue of the amount and propriety of the allowance of attorneys' fees was in fact raised by defendants in the trial court. At that time, the court stated that it was not the appropriate time to raise that issue. We find, therefore, that the issue was sufficiently raised in the trial court, though the court did not then rule on it.

Under "An Act in relation to the partition of real estate * * *" (Ill. Rev. Stat. 1973, ch. 106, par. 68), it was specifically provided that the court could allow reasonable fees for the plaintiff's solicitor "so that each party shall pay his or her equitable portion thereof, unless the defendants, or some of them, shall interpose a good and substantial defense to the complaint. In such case the party or parties making such substantial defense shall recover their costs against plaintiff according to equity." The authorization for award of attorneys' fees in a partition action is based on the fact that plaintiff's attorney acts for all the interested parties. It has

been said that personal animosity between the parties may necessitate defendant retaining counsel in a partition action, but that alone does not justify the court in refusing to apportion plaintiff's attorneys' fees.

In the instant case, the defendants did not object to the partition action, but rather contended that the land should be sold and that there should be no partition in kind. Defendants therefore, vigorously resisted the partition in kind although a partition resulting in a sale was not resisted. As stated in *O'Malley v. Walker* (1st Dist. 1955), 4 Ill. App. 2d 555, 562:

> "The question for a defendant becomes which expense shall he risk: shall he employ counsel and have to pay his counsel's fees that his rights may be protected, or shall he risk the loss of valuable rights and pay only his pro rata share of plaintiff's attorney's fees?
>
> This dilemma confronting a defendant in these situations did not exist at common law. By statute it is now impressed upon him. A penalty is now imposed by law for his exercise of bad judgment. For these reasons the statute is strictly construed and the penalty not lightly or recklessly imposed. [Citations.] If his doubt appears reasonable, if there exists between the parties an honest difference of opinion, apportionment of plaintiff's solicitor's fees will not be allowed."

The courts have also found that solicitor's fees should not be allowed where there is no evidence showing what services the solicitor has performed or the value thereof. *Metheny v. Bohn* (1897), 164 Ill. 495.

In view of the fact that a substantial portion of services of plaintiffs' attorneys were obviously expended by the attorneys in resisting defendants' attempt to require that a sale be made of Outlot 19, and in the process of resisting a partition in kind, the adversary nature of the proceeding is apparent from the record. Consistently with previous precedents and the applicable section 25 of "An Act in relation to the partition of real estate \* \* \*" (Ill. Rev. Stat. 1973, ch. 106, par. 68), fees to be charged as costs apportioned to the parties should be allowed to the extent only that such services were employed in the initiation of the action for partition, but not in pursuit of the adversary or partisan procedures in the trial of this cause. We also note that there was no proof or specification of the actual services performed by the attorney or the value of such services.

■■ Accordingly, we conclude that the allowance of attorneys' fees of $2,000 in this action is not supported by the record, and that this cause should be remanded for the purpose of determining the proper amount of attorneys' fees which should be allowed to plaintiffs' attorneys,which could be charged as costs. Such attorneys' fees should be solely those which are performed for the benefit of both plaintiffs and defendants, and not for plaintiffs alone.

For the reasons stated, therefore, the judgment of the Circuit Court of

Iroquois County is affirmed, with the exception of the portion awarding attorneys' fees in the sum of $2,000 to plaintiffs' attorneys. This cause is, therefore, remanded solely for the purpose of determining the appropriate amount of attorneys' fees to be allowed to plaintiffs' attorneys in this cause as costs to be paid in part by defendants as well as plaintiffs.

Affirmed in part and reversed and remanded in part.

STOUDER and STENGEL, JJ., concur.